1

2

3

4              UNITED STATES DISTRICT COURT

5                   DISTRICT OF NEVADA

6                        * * *
                           )
7  RAUL MARTINEZ; MICHAEL    )
   JACOBSON; PAUL NEWMAN;    )
8  CLAIRE LICHTENSTEIN and   )      2:11-CV-00457-PMP-VCF
   WESLEY WERT,              )
9                           )
                            )        **ORDER**
10            Plaintiff,      )
                            )
11  vs.                      )
                            )
12  CLARK COUNTY, NEVADA; DIANA)
   ALBA, in her capacity as CLARK  )
13  COUNTY CLERK FOR THE CLARK )
   COUNTY; DAVID ROGER, in his )
14  capacity as CLARK COUNTY   )
   DISTRICT ATTORNEY; and     )
15  CATHERINE CORTEZ MASTO, in )
   her capacity as ATTORNEY    )
16  GENERAL OF NEVADA.        )
                            )
17                           )
              Defendants.     )
18  _____)

19        Before the Court are Defendant Catherine Cortez-Masto's Motion to

20  Dismiss (Doc. #10), and  Defendants Clark County, Diana Alba, and David Rogers'

21  Motion to Dismiss (Doc. #15).

22  **I.  BACKGROUND**

23        This is a civil rights action challenging the constitutionality of Nevada's

24  statutory provision permitting a person to obtain a certificate to solemnize marriage

25  only if the person is affiliated with a religious organization.  Plaintiff Raul Martinez

26  ("Martinez") is an atheist who twice has sought a certificate but has been denied.

1   (Compl. (Doc. #1) at 2-3.)  Plaintiff Michael Jacobson ("Jacobson") is a member of

2   the American Humanist Association who likewise has been denied a certificate.  (Id.

3   at 3.)  Plaintiff Paula Newman ("Newman") is a notary public who would like to

4   solemnize marriages but has declined to apply for a certificate because she is not

5   affiliated with any religious organization and she is aware of Martinez's and

6   Jacobson's rejections.  (Id.)  Plaintiffs Claire Lichtenstein and Wesley Wertz are

7   Clark County residents who are engaged and wish to have a secular ceremony, but

8   they allege they are having trouble locating a secular individual to perform the

9   wedding.  (Id.)

10          Plaintiffs challenge arises from Nevada Revised Statutes § 122.064, which

11  requires a certificate of permission to perform marriages in the State.  To obtain the

12  certificate, the applicant must apply for one from the county clerk for the county in

13  which the applicant resides.  Nev. Rev. Stat. § 122.064(1).  Section 122.064(1)(b)

14  provides that when applying for the certificate, the applicant must "[s]how the date

15  of licensure, ordination or appointment of the minister or other person authorized to

16  solemnize a marriage, and the name of the church or religious organization with

17  which he is affiliated."  The statute also requires that prior to approving an

18  application for a certificate, the county clerk must "satisfy himself" that, among other

19  requirements, "[t]he applicant's ministry is one of service to his church or religious

20  organization or, in the case of a retired minister, or other person authorized to

21  solemnize a marriage, that his active ministry was of such a nature."  Id.

22  § 122.064(3)(a).  Nevada statutorily provides that the only other persons who may

23  solemnize marriages are Supreme Court justices, district court judges, justices of the

24  peace, municipal judges, and commissioners and deputy commissioners of civil

25  marriages.  Id. § 122.080.

26  / / /

1   Plaintiffs bring this suit against Defendants Clark County, Nevada; Clark
2   County Clerk Diana Alba; Clark County District Attorney David Roger, and Nevada
3   State Attorney General Catherine Cortez-Masto.  Plaintiffs assert § 122.062 is
4   facially invalid under the First Amendment and §§ 122.062 and 122.064 are invalid
5   as applied by Clark County (count one).  Plaintiffs also argue § 122.062 violates the
6   religious test clause of Article 6 of the United States Constitution (count two).
7   Plaintiffs further assert that § 122.062 and 122.064 violate Article 1, section 4 of the
8   Nevada Constitution (count three).  Finally, Plaintiffs contend §§ 122.062 and
9   122.064 violate the equal protection clause of the United States Constitution (count
10  four).  Plaintiffs seek declaratory and injunctive relief.  Defendants now move to
11  dismiss in two separate motions.

12  **II. DEFENDANT CATHERINE CORTEZ-MASTO'S MOTION TO DISMISS**
13  **(Doc. #10)**

14  Defendant Catherine Cortez-Masto ("Cortez-Masto") moves to dismiss all
15  claims against her, arguing that although Plaintiffs' Complaint generally falls within
16  the Ex parte Young exception to the Eleventh Amendment, the Complaint fails to
17  allege she has any authority to enforce or has threatened to enforce the challenged
18  statutory provisions, and she thus is not a proper defendant.  Cortez-Masto argues the
19  statutory provisions specifically provide for enforcement by the county clerks and
20  district attorneys, not the State attorney general.  Cortez-Masto also argues that
21  Plaintiffs' state law claim is barred by the Eleventh Amendment because the Ex parte
22  Young doctrine allows for prospective injunctive or declaratory relief for the
23  vindication of federal rights, not state rights, and the Court's supplemental
24  jurisdiction does not suffice to abrogate state sovereign immunity.

25  Plaintiffs respond that Cortez-Masto has sufficient enforcement connection
26  to the challenged statutory provisions because she has statutory authority to enforce

the certificate requirements due to her authority to prosecute any violation of Nevada state law, and it is illegal to perform a marriage in Nevada without a certificate. Plaintiffs also contend that Cortez-Masto's argument that she never has enforced or threatened to enforce the statutes does not grant her Eleventh Amendment immunity because the mere possibility of prosecution is sufficient to support Plaintiffs' claims, and Cortez-Masto has not indicated she will not prosecute violations in the future. As to the state law claim, Plaintiffs argue that Cortez-Masto does not argue that the County Defendants are subject to Eleventh Amendment protection, and therefore Plaintiffs' state law claim may proceed. Plaintiffs argue that by statute Cortez-Masto may decline to defend against the Nevada constitutional claim, but the claim will go forward against the other Defendants with or without her participation.

Cortez-Masto replies that the statutory provisions Plaintiffs cite do not permit her to initiate criminal prosecutions. Rather, she can only appear in and take over pending prosecutions. Cortez-Masto contends that because she is not generally empowered to initiate criminal proceedings, and the legislature has not given her that power in the marriage solemnization statutes like it has in other instances, she lacks a connection with enforcing the statute and therefore is entitled to Eleventh Amendment immunity.

### A. Federal Claims

Pursuant to the Eleventh Amendment to the United States Constitution, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suits against a state by citizens of another state, as well as suits against a state by that state's own citizens. Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment also bars suits against

a state official where the state is the real party in interest.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984).

An exception to the Eleventh Amendment exists, pursuant to Ex parte Young, 209 U.S. 123 (1908), for a suit against a state officer which seeks prospective equitable relief to end continuing violations of federal law.  Culinary Workers Union, Local 226 v. Del Papa, 200 F.3d 614, 619 (9th Cir. 1999). However, to avoid an end run around the Eleventh Amendment, the state official who the plaintiff seeks to enjoin under Ex parte Young "must have some connection with the enforcement of the act to avoid making that official a mere representative of the state."  Id. at 619 (quotation omitted).  "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).  To determine whether the state official has the requisite connection, the Court looks to relevant state law.  Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998).

Even if a state official does not have actual authority to enforce a statute, suit against a state official may be permissible if the official threatens prosecution, a prosecution is likely, or even is "remotely possible."  Culinary Workers Union, Local 226, 200 F.3d at 617-18 (quotation omitted) (declining to address whether attorney general had enforcement power under Nevada state law where it sufficed that attorney general sent a letter stating her intent to cause the statute to be enforced unless the plaintiff stopped distributing a handbill).  The state official may subject herself to suit if she intends either to enforce a statute herself or to "encourage local law enforcement agencies to do so."  Id. at 618 (quotation omitted).

/ / /

Nevada's marriage solemnization laws do not directly provide for enforcement by the state attorney general.  Rather, the county clerk is tasked with granting or denying applications for certificates.  To the extent the statutes provide for criminal penalties, enforcement would fall to the district attorney.

Plaintiffs contend that Nevada Revised Statutes § 228.120(3) provides the necessary enforcement power to make the attorney general a proper defendant in this action.  Pursuant to § 228.120(3), the attorney general may "[a]ppear in, take exclusive charge of and conduct any prosecution in any court of this State for a violation of any law of this State, when in his or her opinion it is necessary, or when requested to do so by the Governor."  However, this provision does not entitle the attorney general to initiate a criminal action.  Ryan v. Eighth Judicial Dist. Court In & For Clark County, 503 P.2d 842, 844 (Nev. 1972) (stating that § 228.120(3) "contemplates a pending prosecution, since a 'prosecution' does not exist until a charge has been filed, and if filed, has not been dismissed.").

The Ninth Circuit has concluded that similar statutory provisions do not suffice to establish the necessary enforcement connection to support the Ex parte Young exception.  For example, the Ninth Circuit held that an attorney general did not have enforcement authority based on Oregon law providing that the attorney general "'shall consult with, advise and direct the district attorneys in all criminal causes and matters relating to state affairs in their respective counties.'"  Southern Pac. Transp. Co. v. Brown, 651 F.2d 613, 614-15 (9th Cir. 1980) (quoting Or. Rev. Stat § 180.060(4)).  In Long v. Van de Kamp, the Ninth Circuit expressed "doubt that the general supervisory powers of the California Attorney General are sufficient to establish the connection with enforcement required by Ex parte Young."  961 F.2d 151, 152 (9th Cir. 1992).  The supervisory powers to which the Ninth Circuit was referring included "direct supervision over the district attorneys," and allowed the

attorney general "[w]hen he deems it advisable or necessary in the public interest, or when directed to do so by the Governor," to "assist any district attorney in the discharge of his duties, and may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law."  Cal. Gov. Code § 12550.

Moreover, even if mere supervisory power generally would suffice, "[a]bsent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction." Long, 961 F.2d at 152.  A lack of threatened enforcement by the state attorney general also would raise a "case or controversy" problem under Article III.  Id.  The Court finds it doubtful that the Nevada attorney general has sufficient enforcement authority to support the Ex parte Young exception to Eleventh Amendment immunity.

Even if the attorney general theoretically has such power, there is no real likelihood she will employ those powers against Plaintiffs' interests in this case. Plaintiffs have not indicated an intent to engage in any criminal conduct in relation to the statute, such as performing marriages knowing they are not authorized to do so. Nev. Rev. Stat. § 122.260 ("If any person shall undertake to join others in marriage, knowing that he or she is not lawfully authorized so to do, or knowing of the existence of any legal impediment to the proposed marriage, he or she is guilty of a misdemeanor.").  Rather, Plaintiffs complain only that they applied for a license and were rejected, or they are having a hard time finding a secular officiant.  Further, the attorney general has not indicated any intention to enforce the marriage solemnization laws against Plaintiffs or anyone else, or to encourage local law enforcement to enforce those laws, and Plaintiffs have presented no evidence or argument that she or her predecessors ever have done so.  Consequently, the Court finds there is no case or controversy between Plaintiffs and the attorney general, and

will dismiss Plaintiffs' federal constitutional claims against Defendant Cortez-Masto.

### B. Nevada State Law Claim

Because the Ex parte Young doctrine developed out of a need to vindicate federal rights, the Ex parte Young exception to the Eleventh Amendment does not apply "in a suit against state officials on the basis of state law." Pennhurst State Sch. & Hosp., 465 U.S. at 106; Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005) (stating Ex parte Young "allows prospective relief against state officers only to vindicate rights under federal law," and because the plaintiff sought to vindicate state law rather than federal law, the claim must be dismissed). Further, the Court's supplemental jurisdiction under 28 U.S.C. § 1367 does not "abrogate state sovereign immunity for supplemental state law claims." Stanley v. Trustees of Cal. State Univ., 433 F.3d 1129, 1133-34 (9th Cir. 2006).

Plaintiffs concede that Cortez-Masto is entitled to Eleventh Amendment immunity on the Nevada state law claim in count three. Plaintiffs argue that under Nevada law, Cortez-Masto's participation in a suit challenging a local ordinance is discretionary, and she may defer to the county authorities to defend the statute. It appears that is what Cortez-Masto has decided to do. The Court will therefore grant Cortez-Masto's motion to dismiss the Nevada state law claim against her.

## III. COUNTY DEFENDANTS' MOTION TO DISMISS (Doc. #15)

Defendants Clark County, Diana Alba, and David Roger ("County Defendants") move to dismiss all claims against them. County Defendants argue Plaintiffs lack standing, fail to state a claim, and have failed to join indispensable parties. Plaintiffs oppose on all grounds.

/ / /

/ / /

**A.  Standing**

County Defendants argue Plaintiffs lack standing to bring their claims because the Court cannot grant relief to any Plaintiff.  According to County Defendants, even if the Court strikes down § 122.062 as unconstitutional, Plaintiffs Martinez, Jacobson, and Newman still will not be able to perform marriages unless they become one of the identified officials (i.e., a judge or commissioner of civil marriages) authorized to solemnize marriages.  Defendants thus argue the only meaningful relief available to Plaintiffs is to seek legislative relief to allow anyone to perform a marriage.  Defendants contend this Court cannot amend the statutes to add a category of people who can perform marriages, only the legislature can do that.  As to Plaintiffs Lichtenstein and Wertz, Defendants argue the Constitution does not guarantee them the right to a wedding a location of their choosing.  County Defendants argue that Plaintiffs Lichtenstein and Wertz may obtain the services of anyone who has a permit, and there is no requirement that the person solemnizing the marriage mention God or perform any religious rites at the marriage ceremony.  Defendants argue Plaintiffs Lichtenstein and Wertz are alleging a right to have their marriage performed by someone who does not believe in God, and there is no such right.

Plaintiffs respond that Martinez and Jacobson have standing because it is solely the statutory requirement that they be affiliated with a religious organization that has resulted in the denial of their applications for certificates.  Plaintiff Newman faces the same injury, except that she did not actually apply for a certificate.  However, Plaintiffs argue she still has standing because she is not required to actually apply when it would have been futile for her to do so.  As to Plaintiffs Lichtenstein and Wertz, Plaintiffs argue they have standing because they have an interest in having a secular person perform their marriage, and that interest is within

the zone of interests the statutes are designed to protect.  Plaintiffs contend that the statutes treat Plaintiffs Lichtenstein and Wertz differently, and less favorably, than individuals who desire to have a religiously affiliated individual perform the marriage ceremony.  Plaintiffs argue their injuries are redressable because if the Court eliminates the unequal distinction, it address the equal protection problem.

To establish standing, a plaintiff must show he has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Ariz. Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1442 (2011) (quotation omitted).  Additionally, the plaintiff's injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (quotation omitted).  Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (quotation omitted).

"When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 666 (1993).

As to redressability, a court may remedy the injuries caused by a constitutionally underinclusive scheme either by "declar[ing] the [statute] a nullity and order[ing] that its benefits not extend to the class that the legislature intended to benefit, or . . . [by] extend[ing] the coverage of the statute to include those who are

aggrieved by the exclusion." <u>Heckler v. Mathews</u>, 465 U.S. 728, 738-39 (1984); <u>Wauchope v. U.S. Dep't of State</u>, 985 F.2d 1407, 1417 (9th Cir. 1993) ("[W]hen the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." (quotation omitted)).  Even if the Court determined at this stage of the proceedings that it would not order extending the statute to include persons such as Plaintiffs, "plaintiffs who allege that a statute is underinclusive nonetheless shall be considered to have an injury for which they can obtain redress," because "[o]therwise, underinclusive statutes effectively would be insulated from constitutional scrutiny." <u>Coakley v. Sunn</u>, 895 F.2d 604, 607 (9th Cir. 1990).

The Court finds Plaintiffs Martinez, Jacobson, and Newman have standing. These Plaintiffs have suffered an injury in fact, as each either actually applied or wished to apply for a certificate but were denied or concluded it was futile to apply. Their injuries are fairly traceable to the County Defendants' conduct because the County Defendants are charged with enforcing the statute, and denied Martinez and Jacobson's applications based on their lack of affiliation with a religious organization, and would have denied Newman's application for the same reason had Newman applied.

Defendants argue that Plaintiffs' claims are not redressable because even if the Court struck the offending statutory provision, Plaintiffs still would not be able to solemnize marriages.  Rather, all Plaintiffs would succeed in doing is further narrowing who may solemnize a marriage.  However, Plaintiffs' injuries could be redressed either by extending the right to solemnize marriage to them, or by withdrawing the right to solemnize marriage granted to those with a religious affiliation.  The Court need not address at this stage which remedy is more

appropriate in this case should Plaintiffs prevail, as we are only at the standing stage. But Plaintiffs' injuries are redressable by the Court, even if the Court later decides that extending the right to solemnize marriages to those who are not affiliated with a religious organization is inappropriate.  Eliminating the allegedly unconstitutional distinction redresses Plaintiffs' injuries, regardless of whether Plaintiffs obtain the remedy of being able to solemnize marriages.

As the Court determines Plaintiffs Martinez, Jacobson, and Newman have standing, the Court need not decide other plaintiffs' standing where they all challenge the constitutionality of the same statutory provision.  Council of Ins. Agents & Brokers v. Molasky-Arman, 522 F.3d 925, 932-33 (9th Cir. 2008).

### B.  No Establishment of Religion or Religious Test

County Defendants argue that the relevant statutory provisions allow free exercise of religious rites with as little governmental interference as possible, and thus the statutory scheme provides means for marriages to be solemnized by both religious and non-religious officiants.  County Defendants argue there is no religious test to obtain a certificate, because it is not enough simply to hold religious beliefs.  Rather, the person must be authorized by the religious organization to carry out weddings for the organization's members.  As to the Nevada constitutional claim, County Defendants argue there is nothing in the Nevada constitution prohibiting the establishment of religion or prohibiting a religious test.

Plaintiffs respond that County Defendants misunderstand their position, as they do not object to religious officials performing marriages.  Rather, they challenge the restriction which bars individuals who are not affiliated with a religious organization from performing marriages.  Plaintiffs argue that the statute violates the Establishment Clause because it aids all religion against non-believers or believers who choose not to affiliate with a religious organization or entity.  Plaintiffs argue

the statute aids religion by permitting individuals associated with a religious organization to perform marriages, while relegating others to be able to do so only if they are appointed or elected to a small number of civic offices.  Plaintiffs contend the statutes fail under the <u>Lemon</u> test because they advance religion, disapprove of those without religious affiliation, and excessively entangle government in religion because the statute permits the county clerk to determine whether the religion is a legitimate one makings its officials eligible for a certificate. Plaintiffs argue the statutory sections violate the Religious Test Clause because they necessarily require an association with a religious organization, regardless of the privately held beliefs of the particular individual.  As to the Nevada constitutional claim, Plaintiffs argue that case law in this district provides that Nevada's free exercise clause has the same scope as the federal equivalent.

1.  First Amendment - Establishment Clause of U.S. Constitution

Pursuant to the Establishment Clause, the government "'may not promote or affiliate itself with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs.'"  <u>Am. Jewish Congress v. City of Beverly Hills</u>, 90 F.3d 379, 383 (9th Cir. 1996) (quoting <u>County of Allegheny v. ACLU</u>, 492 U.S. 573, 590-91 (1989)).  To determine whether a law violates the Establishment Clause, courts apply the <u>Lemon</u> test. <u>Lemon v. Kurtzman</u>, 403 U.S. 602 (1971).  Under the <u>Lemon</u> test, governmental conduct does not violate the Establishment Clause if it (1) has a secular purpose, (2) does not have as its "principal or primary effect the advancement or inhibition of religion," and (3) does not foster an excessive governmental entanglement with religion."  <u>Id.</u> at 612-13.

/ / /

/ / /

Under the first prong, governmental actions "taken to avoid potential Establishment Clause violations have a valid secular purpose under Lemon." Nurre v. Whitehead, 580 F.3d 1087, 1096-97 (9th Cir. Wash. 2009). Under the second prong, governmental action has the primary effect of advancing or inhibiting religion if "it is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." Id. (quotation omitted). "This is an objective test, asking whether a reasonable observer who is informed . . . [and] familiar with the history of the government practice at issue, would perceive the action as having a predominately non-secular effect." Id. (quotation omitted).

Under the third prong, the government need not avoid any entanglement with religion. Id. "Entanglement is a question of kind and degree, . . . and this prong seeks to minimize the interference of religious authorities with secular affairs and secular authorities in religious affairs." Id. (quotations and internal citation omitted). Entanglement may be either administrative or political. Id. at 1097. "Administrative entanglement typically involves comprehensive, discriminating, and continuing state surveillance of religion." Id. (quotation omitted). Political entanglement involves divisiveness along political lines resulting from government action. Id. Political entanglement alone does not constitute excessive entanglement. Id.

The parties do not thoroughly brief this issue. However, a fair reading of Defendants' motion is that a secular purpose of the statute is to avoid a free exercise claim by permitting citizens the free exercise of traditional religious matrimonial rites with as little governmental interference as possible. Avoiding potential free exercise lawsuits is a legitimate secular purpose, and thus the first prong of the Lemon test is satisfied. Beyond this statement, however, Defendants do not attempt to defend the law on the other two factors of the Lemon test.

14

Given Defendants' failure to advance any argument on the point, the Court declines to consider dismissal on the basis that the religious affiliation requirement in § 122.064 does not have as its principal or primary effect the advancement of religion or that it does not foster an excessive governmental entanglement with religion.  The last prong is particularly troublesome in this case because the statute provides that the county clerk must "satisfy himself" that, among other requirements, "[t]he applicant's ministry is one of service to his church or religious organization or, in the case of a retired minister, or other person authorized to solemnize a marriage, that his active ministry was of such a nature." Nev. Rev. Stat. § 122.064(3)(a).  Were the county clerk deemed to have  unfettered discretion to decide if a particular religious organization is a bona fide religion, that would likely constitute a significant entanglement.

Defendants rely on McCollum v. California Dept. of Corrections and Rehabilitation, 647 F.3d 870, 874 (9th Cir. 2011).  There, the Ninth Circuit considered constitutional challenges to the California Department of Corrections' paid chaplaincy program, which paid chaplains of certain faiths but not others to minister to prisoners.  A Wiccan volunteer chaplain sued, claiming his own rights, as well as those of inmates who sought his services, arguing he should be eligible to be employed in the paid chaplain program.  Id. at 874.  The Ninth Circuit dismissed the Wiccan chaplain's derivative claims based on prudential standing concerns.  Id. at 878.  The Court dismissed the chaplain's equal protection claim for failure to allege the particulars of to whom he was similarly situated. Id. at 880-81.  The Court went on to dismiss various statutory claims.  Id. at 881-83.  The Court nowhere evaluates an Establishment claim in this case, because the Wiccan chaplain was not challenging the chaplaincy program per se as an unconstitutional establishment of religion.  He just wanted to be able to participate in it equally with chaplains from other faiths.

/ / /

1    It is unclear why Defendants think <u>McCollum</u> helps them on the Establishment

2    Clause claim here, as there was no Establishment claim in <u>McCollum</u>.  To the extent that

3    case recognizes the inmates had a free exercise right which the California Department of

4    Corrections was trying to accommodate, that is not a particularly controversial point and one

5    which Plaintiffs appear to readily accept as they do not argue ministers ought to be

6    prohibited from solemnizing marriages.

7    Plaintiffs cite an unpublished case from the District of Hawaii, <u>Woods-Bateman</u>

8    <u>v. Hawaii</u>, which upheld Hawaii's marriage solemnization law which also limits the

9    eligibility to solemnize marriage to certain civic officials and religious officers who are

10   authorized to solemnize marriages by their religious organization.  No. 07-00119 HG LEK,

11   2008 WL 2051671 (D. Haw. May 13, 2008) (unpublished).  The court there held that the

12   solemnization statute had a secular purpose in maintaining the integrity of marriages by

13   ensuring solemnization only by those belonging to an organization with a "vested interest in

14   solemnizing marriages," and in ensuring accuracy of reported information regarding

15   marriages.  <u>Id.</u> at *10.  Additionally, the court also recognized the interest in accommodating

16   citizens' religious beliefs.  <u>Id.</u> at *11.

17   As to whether the statute inhibited or advanced religion, the court concluded that

18   it did not advance religion, it merely accommodated citizens' sincerely held religious

19   beliefs, and still allowed for non-religious ceremonies to be performed by judges.  <u>Id.</u>  The

20   court stated that the plaintiff's ineligibility there was "rationally grounded in not having a

21   leadership position in an organization with a vested interest in the integrity of marriages."

22   <u>Id.</u> at 11.

23   Finally, as to excessive entanglement, the court stated the following:
      Here, requiring applicants for a license to perform marriages to be a
24    leader of a religious denomination or society does not grant churches
      control over who may solemnize a marriage.  A church who documents
25    an applicant's fitness to be licensed, comments only on the fitness of a
      particular applicant in accordance with the doctrine of its religious
26    community.  The same church has no authority in the statute to block

the provision of licenses to other applicants from other religious denominations or other societies.  Nor does any religious denomination have the statutory authority to prevent a judge from being licensed to perform marriages.

Id. at 12.

This Court does not concur with the Hawaii court on the last prong.  It misses the mark to say that one religion does not get a veto on another, or on judges getting to perform marriages.  The point is that a benefit is accorded to religiously affiliated individuals that is denied to non-religiously affiliated individuals purely on a religious-based distinction.  Moreover, the Nevada statute appears to give unfettered discretion to the county clerk to decide whether a particular organization qualifies as a religious organization to trigger eligibility for the applicant seeking a certificate.  The Woods-Bateman court did not consider the entanglement issues that might entail.  The case is unpublished, out-of-district, non-controlling authority that was decided at the summary judgment stage, whereas we are at dismissal.  The Court finds it unpersuasive and will  deny the motion to dismiss the Establishment Clause claim.

### 2.  Religious Test Clause of Article 6 of the U.S. Constitution

Article VI of the U.S. Constitution provides: "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."  Consequently, a state law cannot "limit[] public offices to persons who have, or perhaps more properly profess to have, a belief in some particular kind of religious concept."  Torcaso v. Watkins, 367 U.S. 488, 494 (1961).  In a rather obvious violation of the clause, the Supreme Court invalidated a Maryland statute which required notary applicants to profess a belief in God.  Id. at 495-96.  In contrast, the Ninth Circuit rejected the proposition that a non-believer conscientious objector was subjected to a religious test when his conscientious objector status was rejected because he did not indicate he believed in a supreme being.  Clark v. U.S., 236 F.2d 13 (9th Cir. 1956).  There, the conscientious objector argued that because he would choose prison over violating his principles, he would

be a felon and ineligible for public office.  Id. at 23.  Beyond these cases, there is little authority on the Religious Test Clause.

Plaintiffs' claim lies between these two extremes.  The statute does not explicitly require a verbal or written attestation to a particular belief.  But it does require the applicant to declare an affiliation with a religious organization to be eligible for a certificate.  The parties do little to flesh out this claim.  Defendants argue that because the statutes do not require an express declaration of a belief in God, but instead refer only to a person's status as an official within a religious organization, the statute does not impose a religious test.  However, Defendants' argument ignores the reality of the situation.  An applicant for a certificate must profess an association with a religious organization, and indeed must have attained a position within that religious organization that permits him to perform marriages for the benefit of the religious organization's members.  The statute therefore limits a position of public trust, the authority to solemnize marriages, only to persons who identify themselves with a religious organization which itself professes various religious beliefs, and only to those individuals associated with the religious organization who have attained a certain official status within the organization.  Practically speaking, it is fair to say that religious organizations do not tend to place in those types of positions people who do not profess to believe the religious organization's tenets.  Again the parties have failed to adequately brief the issue, but the Court finds it  one step too far in an inferential chain to violate the Religious Test Clause, and concludes that dismissal at this stage is  premature.

### 3.  Article 1, section 4 of the Nevada Constitution

Article 1, section 4 of the Nevada Constitution provides:

> The free exercise and enjoyment of religious profession and worship without discrimination or preference shall forever be allowed in this State, and no person shall be rendered incompetent to be a witness on account of his opinions on matters of his religious belief, but the liberty of conscience [conscience] hereby secured, shall not be so construed, as to excuse acts of licentiousness or justify practices inconsistent with the peace, or safety of this State.

The Nevada Supreme Court has never indicated whether this language includes a prohibition on the establishment of religion.  The U.S. District Court for the District of Nevada twice has indicated that Nevada's provision is co-extensive with the First Amendment, but each time it was in relation to the free exercise of religion, not establishment.  Jacobs v. Clark County Sch. Dist., 373 F. Supp. 2d 1162, 1170 n.1 (D. Nev. 2005); Riback v. Las Vegas Metro. Police Dep't, No. 2:07-CV-1152-RLH-LRL, 2008 WL 3211279, *7 (D. Nev. Aug. 6, 2008) (unpublished).

Looking to other law for guidance, California has both a "no preference" clause and an establishment clause.  Cal. Const., art. I, section 4 ("Free exercise and enjoyment of religion without discrimination or preference are guaranteed. . . .  The Legislature shall make no law respecting an establishment of religion.").  In a case challenging an exemption from historical landmark zoning laws for religious organizations, the California Supreme Court concluded that because the law did not violate the First Amendment of the U.S. Constitution under the Lemon test, it also did not violate either the preference or establishment clauses of the California Constitution.  East Bay Asian Local Dev. Corp. v. State of Cal., 13 P.3d 1122, 1139 (Cal. 2000).

The Court finds Nevada likely would follow California and use the Lemon test to determine if there was a "preference" for religion.  Thus, even though there is not an establishment clause explicitly in the Nevada Constitution, the Court concludes the result likely would be the same.  If a law fails the Lemon test, it is a preference, but if it passes the Lemon test it is not a preference.  This case therefore would rise and fall with the federal claims.

### 4.  Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Pursuant to the Equal Protection Clause, the government must treat

19

all similarly situated persons alike.  <u>Green v. City of Tucson</u>, 340 F.3d 891, 896 (9th Cir. 2003).  "A showing that a group was singled out for unequal treatment on the basis of religion may support a valid equal protection argument."  <u>Alpha Delta Chi-Delta Chapter v. Reed</u>, 648 F.3d 790, 804 (9th Cir. 2011) (quotation omitted).

To determine whether the challenged law violates the Equal Protection Clause, the Court first selects the proper level of scrutiny to apply.  <u>Honolulu Weekly, Inc. v. Harris</u>, 298 F.3d 1037, 1047 (9th Cir. 2002).  If the challenged law burdens a fundamental right or makes a distinction based on a suspect classification, the court employs strict scrutiny review.  <u>Id.</u>  Under strict scrutiny review, the state must show that the challenged law is "narrowly drawn to serve a compelling state interest."  <u>Id.</u>  If the law does not burden a fundamental right or target a suspect classification, it is subject to rational basis review.  <u>Id.</u> Under rational basis review, the challenged law will be upheld if it is "rationally related to a legitimate governmental purpose."  <u>Id.</u>

Religion is a suspect classification.  <u>Friedman v. Rogers</u>, 440 U.S. 1, 17 (1979) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."); <u>Bowman v. U.S.</u>, 564 F.3d 765, 772 (6th Cir. 2008) ("Strict scrutiny applies where the classification affecting eligibility for benefits is based on religion or burdens the exercise of religion.").  However, "[f]or equal protection purposes, heightened scrutiny is applicable to a statute that applies selectively to religious activity only if the plaintiff can show that the basis for the distinction was religious, not secular."  <u>Droz v. C.I.R.</u>, 48 F.3d 1120, 1125 (9th Cir. 1995).

Defendants do not make any argument about Plaintiffs' equal protection claim. The heading of the section dealing with the claims on the merits refers only to the establishment and religious test claims.  Likewise, the discussion, does not expressly, or

20

1   even indirectly  appear to challenge the equal protection claim.  The closest Defendants

2   come is mentioning that in <u>McCollum</u>, the Wiccan volunteer clergy's claim was denied.

3   Defendants, however,  do not identify what standard of review should apply here or why,

4   nor do they do any analysis as to how <u>McCollum</u>'s outcome controls here.

5          To the extent the challenge is based solely on <u>McCollum</u>, it is misplaced.  In

6   <u>McCollum</u>, the plaintiff contended that because he was a Wiccan, the defendants treated him

7   differently than other volunteer and paid clergy.  647 F.3d at 880-81.  The Ninth Circuit

8   summarily dealt with the equal protection claim by stating the plaintiff offered "a few

9   anecdotal examples, but without much content as to the basic question of 'who, what, where,

10  [and] how' as the district court put it.  Nor does he articulate which clergy were similarly

11  situated or how he is similar to these other clergy.  Certainly, the claims are missing

12  evidence that any alleged discrimination was intentional."  Id.

13         Here, <u>McCollum</u> is distinguishable because it was at the summary judgment

14  stage, while we are at the dismissal stage.  Here, the basis for the distinction appears on the

15  face of the statute, whereas in <u>McCollum</u>, the plaintiff was making a factual challenge that

16  he was treated differently, but he failed to produce sufficient evidence of the disparate

17  treatment or its intentional nature.  Here, the fact of disparate treatment and the intentional

18  nature of the distinction appear on the face of the statute (not the intent to discriminate in the

19  pejorative sense, but that a distinction intentionally is made between religiously affiliated

20  people and non-religiously affiliated people).  Consequently, to the extent this is the basis

21  for Defendants' equal protection analysis, the Court will deny the motion to dismiss.

22                **C.  Indispensable Parties**

23         County Defendants argue Plaintiffs must join as indispensable anyone who has a

24  permit to perform marriages under the statutory provisions which Plaintiffs challenge.

25  County Defendants argue these persons are readily identifiable and have at stake both

26  freedom interests and property interests (they get paid for performing the ceremony) if

21

Plaintiffs prevail in striking down the provisions pursuant to which these individuals

perform weddings.

Plaintiffs respond that current certificate holders are not necessary parties because

the Court can afford complete relief without them.  Additionally, Plaintiffs argue current

certificate holders have no legally protectable interest in excluding others from performing

marriages.  Plaintiffs contend those already holding licenses would be unaffected by this

lawsuit.  Plaintiffs also argue Defendants' argument leads to absurd results if it would

require joinder whenever a plaintiff sought to broaden individual rights.

Under Federal Rule of Civil Procedure 19(a), a party must be joined as a

"required" party in two circumstances: (1) when "the court cannot accord complete relief

among existing parties" in that party's absence, and (2) when the absent party "claims an

interest relating to the subject of the action" and resolving the action in the person's absence

may, as a practical matter, "impair or impede the person's ability to protect the interest," or

may "leave an existing party subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1).  If the

Court finds an absent party is "required" under either of these tests, the Court then

determines whether joinder is feasible.  In re County of Orange, 262 F.3d 1014, 1022 (9th

Cir. 2001).  Joinder is feasible if the person is subject to service of process and his joinder

will not deprive the Court of subject matter jurisdiction.  Fed. R. Civ. P. 19(a)(1).  If joinder

of the necessary party is feasible, then the party will be joined and the action will proceed.

If joinder is not feasible, then the Court must determine whether, in "equity and

good conscience," the party is "indispensable" under Rule 19(b) such that the action should

not proceed without that party.  Fed. R. Civ. P. 19(b).  In making this determination, the

Court should consider:

> (1) the extent to which a judgment rendered in the person's absence
> might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;
(B) shaping the relief; or
(C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Id. This list is not exhaustive, and the Court can consider other factors, such as the "interests of the courts and the public in complete, consistent, and efficient settlement of controversies." Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal. v. City of Los Angeles, 637 F.3d 993, 1000 (9th Cir. 2011).

Impairment of the absent party's interest "may be minimized if the absent party is adequately represented in the suit." Shermoen v. United States, 982 F.2d 1312, 1318 (9th Cir. 1992) (quotation omitted).  To determine whether an existing party adequately represents an absent party, the court considers whether: (1) the existing party's interests in the suit are such that it "undoubtedly" will make all of the absent party's arguments; (2) the existing party is "capable of and willing to make such arguments"; and (3) "the absent party would offer any necessary element to the proceedings that the present parties would neglect." Id. (quotations omitted).

The Rule 19 inquiry "is a practical one and fact specific, and is designed to avoid the harsh results of rigid application.'" Clinton v. Babbitt, 180 F.3d 1081, 1088 (9th Cir. 1999) (quoting Shermoen, 982 F.2d at 1317)  The party moving to dismiss bears the burden of persuading the Court that dismissal is warranted.  Id.  Whether to dismiss lies within the Court's discretion.  Shermoen, 982 F.2d at 1317.

The question here is whether Plaintiffs must join all persons who hold certificates via the religious affiliation provision, as there is a possibility the Court will invalidate that provision, thus potentially resulting in the loss of the certificate.  There is some question whether the current certificate holders are required parties.  First, it is possible for the Court to accord complete relief among existing parties because the Court could extend the benefit

of being eligible to apply for the certificate to persons like Plaintiffs rather than eliminate that eligibility for those affiliated with religious organizations. However, it is difficult to decide at this point the preferred course should Plaintiffs prevail on the merits.

Plaintiffs contend they do not object to religiously affiliated individuals performing marriages, and thus presumably they will request the Court extend solemnization rights to them, rather than take it away from the religiously affiliated individuals.  However, Defendants argue the Court cannot create a new class of individuals authorized to solemnize marriages, only the Nevada legislature can do so.  That argument is not without some force.

Defendants contend that if certificate holders are required parties, joinder is feasible because the State maintains a list of individuals who hold certificates, and that list is readily accessible. Defendants rely on cases regarding disputes over title to land, leases, or licenses for their indispensable party argument. Those cases have little relation to a constitutional challenge to a statute.

Defendants have not directed the Court to any case law requiring a plaintiff who challenges the constitutionality of a statute to join everyone conceivably impacted by a declaration that the statute is unconstitutional.  The cases dealing with these types of challenges never have suggested that joinder of potentially impacted individuals was required, even where the potential impact would be taking benefits away from others to correct the alleged disparity in treatment.  See, e.g., Heckler, 465 U.S. 728 (1984) (holding the plaintiff had standing to challenge disparity in social security benefits determination between dependent men and dependent women because disparity could be remedied by withdrawing exemption from offset to everyone; no suggestion that joinder of every woman who may be entitled to the exemption was required to be joined even though they may lose benefit); Norwood v. Harrison, 413 U.S. 455 (1973) (holding state law giving free textbooks to students enrolled in racially-discriminatory schools was invalid; no suggestion that each student had to be joined even though adverse outcome may result in denial of free textbooks

1  to students); <u>Griffin v. County Sch. Bd. of Prince Edward Cty.</u>, 377 U.S. 218 (1964)

2  (affirming district court's injunction of using state tuition and tax grants to support private

3  segregated schools; no suggestion that parties who would have received tuition grants or tax

4  credits were indispensable parties).

5       Although Rule 19 arguably favors joinder of certificate holders in this case, the

6  Court finds it impractical and unnecessarily burdensome to require Plaintiffs to join every

7  other person who conceivably may be affected by a declaration that the challenged law is

8  unconstitutional on the equal protection and establishment challenges presented.

9  Defendants clearly have the responsibility to enact constitutional laws and to apply those

10  laws in a constitutional fashion. They also share the responsibility and the ability to

11  vigorously defend them from the  constitutional challenges advanced by Plaintiffs.

12      **IT IS THEREFORE ORDERED** that Defendant Catherine Cortez Masto's

13  Motion to Dismiss (Doc. # 10) is **GRANTED.**

14      **IT IS FURTHER ORDERED** that Defendant Clark County, Diana Alba and

15  David Roger's Motion to Dismiss (Doc. # 15) is **DENIED.**

16

17  DATED:  January 18, 2012.

18

19  _____

20  PHILIP M. PRO
    United States District Judge

21

22

23

24

25

26